UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES,
    Plaintiff,

v.

MIGUEL AGUILAR,
    Defendant.

CRIMINAL NO.
11-10417-NMG

**REPORT AND RECOMMENDATION RE:**
**MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE,**
**SET ASIDE, OR CORRECT SENTENCE**
**(DOCKET ENTRY # 497)**

**August 8, 2018**

**BOWLER, U.S.M.J.**

Pending before this court is a pro se motion filed by defendant Miguel Aguilar ("defendant") to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("section 2255"). (Docket Entry # 497). The United States of America ("the government") filed an opposition (Docket Entry # 527) and defendant submitted a reply to the government's opposition. (Docket Entry # 528). The matter is therefore ripe for review.

PROCEDURAL BACKGROUND

Defendant raises two grounds for vacating the conviction and sentence. The first ground is an allegation of ineffective assistance of counsel in violation of defendant's Sixth Amendment rights. Defendant argues that trial counsel was ineffective because: (1) trial counsel did not "properly explain [to defendant] the extent of the Safety Valve provision

and the difference vis-à-vis a proffer session upon a cooperation agreement"; (2) trial counsel failed to argue that defendant satisfied safety valve requirements; and (3) trial counsel failed "[t]o request a mitigating role in the charged offense." (Docket Entry ## 497, 511). Although not in the section 2255 motion itself, defendant asserts in the supporting memorandum a second ground for vacating the conviction and sentence on the basis that "the plea agreement was not made voluntarily, knowngly, [sic] and intelligently." (Docket Entry # 511, p. 10). Ultimately, defendant requests the section 2255 motion be granted and his sentence vacated.

FACTUAL BACKGROUND

I.   <u>Superseding Indictment</u>

On January 16, 2014, a grand jury sitting in the United States District Court for the District of Massachusetts issued a Superseding Indictment charging defendant with: (1) conspiracy to possess with intent to distribute and to distribute cocaine and heroin in violation of 21 U.S.C. § 846 ("Count I"); and (2) possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841 ("Count II"). (Docket Entry # 193). In the absence of death or serious bodily injury, these charges carry a statutory range of imprisonment of not less than ten years and not more than life. See 21 U.S.C. § 841(b)(1).

II.   <u>Plea Agreement</u>

2

On June 4, 2015, defendant entered into a binding plea ("the plea agreement") with the government pursuant to Fed. R. Crim. P. 11(c)(1)(C).  (Docket Entry # 392).  Under the agreement, defendant agreed to plead guilty to:  (1) conspiracy to possess with intent to distribute and to distribute cocaine and heroin in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1).  (Docket Entry # 392).  The parties agreed in the plea agreement that defendant's "base offense level is 34, because the equivalent of at least fifty kilograms of cocaine but less than 150 kilograms of cocaine are attributable to him."  (Docket Entry # 392).  The plea agreement notes that, "based on defendant's prompt acceptance of personal responsibility for these offenses of conviction in this case, the adjusted offense level is reduced by three."  (Docket Entry # 392).

The plea agreement sets forth that "the U.S. Attorney and Defendant agree that . . . incarceration for a period of time not less than 87 months and not more than 120 months" is "a reasonable and appropriate disposition of this case."  (Docket Entry # 392).  Further, it states, "Defendant understands and acknowledges that, if the Court declines to apply USSG § 5C1.2 and 18 U.S.C. § 3553(f), Defendant will not receive an additional two-level reduction pursuant to USSG § 2D1.1(b)(17),

3

but will receive a sentence at or above the statutory mandatory minimum term of years." (Docket Entry # 392). The plea agreement continues:

> The U.S. Attorney may, at her sole option, be released from her commitments . . . if at any time between Defendant's execution of this Plea Agreement and sentencing, Defendant: (a) Fails to admit a complete factual basis for the plea; (b) Fails to truthfully admit Defendant's conduct in the offenses of conviction; (c) Falsely denies, or frivolously contest, relevant conduct for which Defendant is accountable under USSG § 1B1.3.

(Docket Entry # 392).

Defendant acknowledged in the plea agreement that "I have had this letter read to me in my native language in its entirety and discussed it with my attorney" and "I am satisfied with the legal representation provided to me by my attorney." (Docket Entry # 392). Defendant also attested: "I understand the crimes to which I have agreed to plead guilty, [and] the mandatory minimum and maximum penalties for those offenses"; that he and his attorney "have had sufficient time to meet and discuss my case"; and "I am entering into this Plea Agreement freely, voluntarily, and knowingly because . . . I believe this Plea Agreement is in my best interest." (Docket Entry # 392).

At defendant's Fed. R. Crim. P. 11 ("Rule 11") hearing on June 15, 2015, defendant answered, "Yes," when the court asked if he was "fully satisfied with the counsel, representation and advice given" by his trial counsel. (Docket Entry # 522). The

government reiterated the terms of the plea agreement, again
noting that, "if the safety valve were not met, 120 months would
be the agreed-upon recommendation of the parties." (Docket
Entry # 522, p. 8). Defendant answered, "Yes," when the court
asked "are those the terms of your agreement with the
Government, as you understand them?" (Docket Entry # 522, p.
9).

      According to the government, "in September, 2010, DEA
Agents in Boston, Massachusetts, began an investigation into
drug-trafficking and money-laundering activities of [a third
party] and his criminal associates." (Docket Entry # 522, p.
13). The government attested in the Rule 11 hearing that if the
matter had proceeded to trial, it would have "introduced
competent evidence proving . . . beyond a reasonable doubt" that
defendant "was a drug and money transporter for the . . .
organization and other drug distributors," that he "used his
tractor trailer truck to transport cocaine and heroin from
California to the east coast where it was received by [co-
defendants] and others," and that he "received drug proceeds and
transported them back to California for remission to drug
suppliers in Mexico." (Docket Entry # 522, p. 13). The
government stated that "on October of 19th, 2011, [defendant]
delivered 40 kilograms of cocaine to [co-defendant] and received
$570,000 in drug proceeds from him. Earlier that day, Agents

had intercepted telephone calls between and among co-Defendants
. . . during which [a co-defendant] stated in lightly coded
language that the drugs would arrive that day." (Docket Entry #
522, p. 14).  Investigators "observed a male approach
[defendant's] truck with a weighted black bag and get into the
passenger's side of the cab.  Shortly thereafter, the male
exited the truck with a weighted red and black bag, which he put
inside a Chevrolet Suburban." (Docket Entry # 522, p. 14).
"Agents recovered 40 kilograms of cocaine from a red and black
bag in the back seat of the Suburban." (Docket Entry # 522, p.
15).  "Agents recovered $570,000 in cash, ten kilograms of
cocaine and five kilograms of heroin from behind the panels of
the interior walls of the [defendant's truck]." (Docket Entry #
522, p. 15).  Defendant answered "No," when asked by the court
"Do you disagree with anything that . . . the Government [says
it] would be able to prove?" (Docket Entry # 522, p. 15).
Thereafter, defendant pled guilty to both Count I and Count II.
(Docket Entry # 522).  The court conditionally accepted the plea
agreement pending the court's receipt and review of a
presentence report. (Docket Entry # 522).

III.  Sentence, Appeal and Section 2255 Petition

     At the sentencing hearing on September 9, 2015, the court
reported that it received and reviewed the presentence report,
the sentencing memorandum, and the attached reports.  (Docket

6

Entry # 457).  When the court asked, "there are no objections to the presentence report; is that correct?[,]" trial counsel replied, "That's correct."  (Docket Entry # 457).  Defendant was given a three-level downward adjustment from an offense level 34 to an offense level of 31 for his prompt acceptance of responsibility.  (Docket Entry # 457).

During the hearing, the court stated, "The Government contends that [defendant] is not so entitled [to a two-level downward adjustment under the safety valve provision] because he has not properly proffered to the Government and, therefore, does not qualify for the fifth element of the so-called section for being entitled to this adjustment."[1]  (Docket Entry # 457). When the court asked, "Do counsel wish to address that issue further at this time?[,]" trial counsel replied, "No, Your

---

[1]   The government's sentencing memorandum states:

> In 2013, the Defendant twice tried to satisfy the requirements of 18 U.S.C. § 3553(f) and USSG § 5C1.2(a)(5) and avoid the mandatory minimum penalty by providing a complete and truthful proffer, but he failed.  (The Defendant declined the government's invitation to conduct a third proffer.) . . . [T]he defendant's two attempts to satisfy the requirements of 18 U.S.C. § 3553(f)(5) and USSG § 5C1.2(a)(5) were riddled with falsehoods, half-truths, and equivocations.  Straight talk was conspicuously absent.

(Docket Entry # 527-1, p. 2).

Honor." (Docket Entry # 457). When the court asked, "Do counsel agree with [the sentencing] calculations?[,]" trial counsel replied "Yes, Your Honor." (Docket Entry # 457). At the hearing, the government explained its sentencing position, which included the following:

> [T]here was an opportunity for [defendant] to make a
> safety valve proffer, and we afforded him as many
> opportunities as he wished to do that, but he failed
> to do so. And I think [defendant's] proffers were
> misleading, and it was clear that he was reluctant to
> provide even the basic information about his offense.
> . . . I think that, had this Defendant successfully
> completed the safety valve proffer, he would have been
> right in the same range [as co-defendants]. But for
> reasons we may never know, [defendant] elected not to
> do so, so he is at the mandatory minimum.

(Docket Entry # 457).

> Speaking to defendant, the court stated:

> [Y]ou could have earned a substantial discount,
> roughly 25 percent, had you truthfully proffered to
> the Government about your crime; that is, had you been
> completely forthcoming and not resorted to falsehoods,
> half truths and equivocations. You have not done so
> for whatever reason, and therefore, you are stuck with
> the consequences.

> Your story is not credible, and therefore, you do not
> qualify for the so-called safety valve application,
> which would have gotten you out of the mandatory
> minimum sentence and given you a two-level downward
> adjustment on your offense level.

(Docket Entry # 457). Thereafter, the court sentenced defendant to a term of imprisonment of 120 months based on the general drug-trafficking provision in the U.S. Sentencing Guideline

Manual ("the Guidelines"), section 2D1.1(b)(17).  (Docket Entry # 457).

DISCUSSION

IV.  <u>Section 2255 Review</u>

Under section 2255, post-conviction relief can be granted if a sentence:  (1) violates the Constitution or laws of the United States; (2) is imposed by a court without jurisdiction; (3) exceeds the maximum penalty authorized by law; or (4) is otherwise subject to collateral attack.  <u>See</u> 28 U.S.C. § 2255(a); <u>Damon v. United States</u>, 732 F.3d 1, 3 (1st Cir. 2013); <u>David v. United States</u>, 134 F.3d 470, 474 (1st Cir. 1998) (citing <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962)). The fourth category functions as a "catch-all" that "includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result . . . in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" <u>David</u>, 134 F.3d at 474 (quoting <u>Hill</u>, 368 U.S. at 428).  Put simply, a successful section 2255 claim under this category "must reveal 'exceptional circumstances' that make the need for redress evident."  <u>Id.</u>

A section 2255 petition is "not a surrogate for a direct appeal," and the burden of proof is on the moving party.  <u>Id.</u>; <u>see also</u> <u>Wilder v. United States</u>, 806 F.3d 653, 658 (1st Cir.

2015); United States v. Cruz, Criminal No. 02-10265-PBS, 2015 WL 9272852, at *1 (D. Mass. Dec. 18, 2015).  To meet this burden, defendant "must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982); see also Ellis v. United States, 313 F.3d 636, 645 (1st Cir. 2002); Ramirez-Burgos v. United States, 313 F.3d 23, 32 n.12 (1st Cir. 2002).

V.   Ineffective Assistance of Counsel

     Defendant alleges that his trial counsel was ineffective because:  (1) trial counsel failed to explain the safety valve; (2) trial counsel failed to adequately argue to the court that defendant satisfied the requirements of the safety valve; and (3) trial counsel failed to request a mitigating role in the charged offenses.  (Docket Entry # 497).

     It is well settled that "the [Sixth Amendment] right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted).  The Supreme Court uses a two-prong test for evaluating claims of ineffectiveness of counsel.  See id.  "A defendant must show that 'counsel's representation fell below an objective standard of reasonableness, ("deficiency prong")' and that 'the deficient performance prejudiced his

defense ("prejudice prong").'"[2]   Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting Strickland v. Washington, 466 U.S. at 687-88 (1984)); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000); Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010).  "There is no [need] for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.

Under the deficiency prong, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  The standard is "'highly deferential'" and requires the defendant "to 'overcome the presumption that

---

[2]  There are, however, circumstances that are so likely to prejudice the accused that no specific showing of prejudice is required.  See United States v. Cronic, 466 U.S. 648, 659 (1984).  For example, no specific showing of prejudice is required where there is a "complete denial of counsel" or where "counsel entirely fails to subject prosecution's case to meaningful adversarial testing."  Id. at 659-62 (citing Davis v. Alaska, 415 U.S. 308 (1974)).

Defendant argues without factual or case support that the standard established in Cronic is applicable to his case. (Docket Entry # 511, p. 8).  On similar facts a district court in this circuit found that the Cronic standard does not apply. See Charles v. United States, Civil Action No. 02-12312-RGS, 2003 WL 21184022, at *16 n.3 (D. Mass. May 20, 2003)(concluding the Cronic standard was not applicable because "there was no complete failure of representation, but a claim that counsel did not do everything that could have been done to achieve a reduction in [defendant's] sentence").

the challenged action might be considered sound trial strategy.'" Pena v. Dickhaut, 736 F.3d 600, 605 (1st Cir. 2013) (quoting United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012)); see also Strickland, 466 U.S. at 689 (there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Consequently, the deficiency prong is satisfied "'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Pena v. Dickhaut, 736 F.3d at 605 (quoting Rodriguez, 675 F.3d at 56). Reasonableness "includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." Wiggins v. Smith, 539 U.S. 510, 514 (2003) (internal quotations omitted).

Under the prejudice prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The requisite showing of prejudice requires more than postulating that counsel's errors 'had some conceivable effect on the outcome of the proceeding.'" Charles v. United States, Civil Action No. 02-12312-RGS, 2003 WL 21184022, at *5 (D. Mass. May 20, 2003) (quoting Strickland, 466 U.S. at 693). Rather, "[a] reasonable probability is a

12

probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694.

A.   Failure to Adequately Explain Safety Valve

        Defendant first argues that trial counsel was ineffective
because counsel did not "properly explain [to defendant] the
extent of the Safety Valve provision and the difference vis-à-
vis a proffer session upon a cooperation agreement." (Docket
Entry # 511).

        The government responds as follows:

        As the defendant acknowledged in the plea agreement
        and at his change-of-plea hearing, the only mechanism
        for escaping the operation of [the] mandatory minimum
        was the completion of a successful and truthful safety
        valve proffer.  The reason the defendant did not
        receive a sentence below the mandatory minimum had
        nothing to do with any deficiency in counsel's
        performance, but rather, as the Court found at
        sentencing, was based on the defendant's own choice to
        "resort . . . to falsehoods, half truths and
        equivocations."

(Docket Entry # 527).

        The plea agreement discloses that, "if the Court declines
to apply USSG § 5C1.2(a)(b) and 18 U.S.C. § 3553(f)" (separately
and collectively, the "safety valve"), "Defendant [would] not
receive an additional two-level reduction." (Docket Entry #
392).  The Rule 11 hearing establishes that defendant understood
that "if the safety valve were not met, 120 months would be the
agreed-upon recommendation of the parties." (Docket Entry #
522, p. 8).

Defendant does not offer support for his allegation that the safety valve was not "properly explained" to him by trial counsel. (Docket Entry # 511). Indeed, he has not identified any specific element of the safety valve which he did not understand. Defendant admits in his section 2255 motion that the "judge did explain in open court the escope [sic] of this provision." (Docket Entry # 497). Defendant continues that, after receiving the court's explanation, trial counsel "told me that it was to [sic] late to request [the safety valve]." (Docket Entry # 497). The record, however, establishes that trial counsel requested the safety valve provision and the court rejected its application on the basis that defendant was not candid in his proffer. (Docket Entry # 457). The plea agreement states that "[d]efendant understands and acknowledges that, if the Court declines to apply" the safety valve provision, "[d]efendant will not receive an additional two-level reduction." (Docket Entry # 392, p. 3). Immediately above defendant's signature, he acknowledges that he discussed the agreement and his "possible defenses" with his trial counsel. (Docket Entry # 392). The plea agreement also reflects that defendant "had sufficient time to meet and discuss [his] case" with trial counsel. (Docket Entry # 392). Finally, the agreement expresses defendant's satisfaction "with the legal representation" trial counsel provided to defendant. (Docket

14

Entry # 392).  Accordingly, the record belies defendant's
contention that trial counsel did not adequately explain the
import of the safety valve provision to defendant.

Moreover, if defendant contests that trial counsel
explained that it was too late to again request the safety valve
after he was sentenced, then counsel provided correct
information.  Pursuant to section 5C1.2(a)(5) of the Guidelines,
a defendant must truthfully provide the government any necessary
information and evidence "not later than the time of the
sentencing hearing."  U.S. Sentencing Guidelines Manual §
5C1.2(a)(5).  In sum, defendant therefore fails to meet his
burden of demonstrating that trial counsel's performance was
deficient under Strickland and its progeny.

Alternatively, defendant fails to meet his burden to show
that trial counsel's failure to properly explain the safety
valve resulted in harm prejudicial to his defense.  Defendant
offers no argument on which this court could reasonably infer
that defendant's actions would have been different but for any
misunderstanding of the safety valve provision.  In the
supporting memorandum to the section 2255 motion, defendant
expressly states that, "[he] proffered everything about his
involvement in the charged conspiracy."  (Docket Entry # 511).
Thus, it was not a deficient understanding of the requirements
of the safety valve that prevented defendant from obtaining

safety valve reduction, it was the lack of candor in his proffers.  Regarding defendant's candor, the court found and the record supports that defendant's story was not credible. (Docket Entry # 457, p. 12).  As determined by the court at sentencing, defendant resorted to "falsehoods, half truths and equivocations" regarding his proffers to the government. (Docket Entry # 457, p. 12).  The court then stated, "Therefore, you do not qualify for the so-called safety valve application." (Docket Entry # 457, p. 12).

Hence, trial counsel's failure, if any, to explain the safety valve provision to defendant did not cause harm to defendant in the form of a lesser sentence by virtue of a two-point downward reduction.  Rather, as found by the court, defendant's failure to provide truthful proffers to the government and his lack of credibility caused him not to qualify for the safety valve provision.  (Docket Entry # 457, p. 12). In short, defendant fails to show that, but for trial counsel's failure to "properly explain [to defendant] the extent of the Safety Valve provision" (Docket Entry # 511, p. 3), the result of the proceeding would have been different.

B.  <u>Trial Counsel's Failure to Argue Safety Valve's Application</u>

Defendant next contends that trial counsel was ineffective by failing to argue during the sentencing hearing that "[defendant] was truthful during the proffer sessions with the

16

Government," and for not requesting that "the Government . . . show[] the Court where and how Petitioner lied during the proffer sessions." (Docket Entry # 511, pp. 14-17). In opposition, the government notes that "[t]he record fully supported the Court's finding at sentencing that the defendant [was not candid]." (Docket Entry # 527, p. 10). The government concludes that "[u]nder these circumstances, there was no deficient performance by counsel and no prejudice." (Docket Entry # 527, p. 10).

Initially examining the prejudice prong, the plea agreement negotiated by trial counsel provided defendant with an opportunity to reduce his sentence. (Docket Entry # 392). For reasons explained in the previous section relative to prejudice, the government is correct in its assertion that trial "counsel's performance cannot be blamed for the defendant's choice not to proffer truthfully." (Docket Entry # 527, p. 9). The court made clear at the sentencing that defendant could have earned the two-level safety valve reduction had he "been completely forthcoming and not resorted to falsehoods, half truths and equivocations." (Docket Entry # 457). As noted in the previous section, the court determined that "[y]our story is not credible, and therefore, you do not qualify for the so-called safety valve application." (Docket Entry # 457); see Carrasquillo v. United States, 818 F. Supp. 2d 385, 391 (D.

Mass. 2011) (finding defendant "suffered no prejudice at the hands of his defense counsel" where the court was "not convinced of [defendant's] truthfulness and would not have supported a safety valve reduction regardless of the persuasive and effective advocacy of defense counsel").

Failure to make an objection does not necessarily undermine the fairness of a sentencing proceeding. For instance, trial counsel's decision, even if taken as error, must still reasonably have resulted in harm to the defendant. See, e.g., David, 134 F.3d at 474 (summarily discounting ineffective assistance of counsel claim in section 2255 motion by noting that defendant received appropriate sentence, therefore sustaining no prejudice). It is defendant's burden to demonstrate that there is a reasonable probability that but for counsel's failure to raise an objection, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694.

In the case at bar, trial counsel's decision not to object to the presentence report or to address the government's contention that defendant was not entitled to a two-level downward adjustment for the safety valve (Docket Entry # 457, pp. 4-5) did not undermine the fairness of the sentencing proceeding. In light of the strength of the government's presentation, it is highly unlikely that even if trial counsel

18

objected and challenged the government's position, the court would have applied a safety valve reduction pursuant to section 2D1.1(b)(17) of the Guidelines, an express possibility of which defendant had been warned.  See, e.g., Robinson v. Merrill, No. 02-46-B, 2002 WL 1173577, at *4 (D. Me. June 3, 2002) (concluding counsel's decision not to object to photograph being admitted into evidence was not prejudicial to outcome, as "[w]hatever tack defense counsel had taken, it is highly likely that the photo . . . would have been admitted).

Defendant fails not only to demonstrate prejudice, but also deficiency of trial counsel.  "Effectiveness does not require that counsel jump through every conceivable hoop, or engage in futile exercises."  Singleton v. United States, 26 F.3d 233, 239 (1st Cir. 1994) (citing United States v. Cronic, 466 U.S. at 656 n.19 ("useless charade" not required)).  Defendant provided information in his proffers that was contradictory and incomplete, and was further contradicted by observations of investigators and intercepted communications.  (Docket Entry # 527-1).  These were facts known at the time by trial counsel. (Docket Entry # 527-1, p. 6).  In light of this information, trial counsel's choice was not "'so patently unreasonable that no competent attorney would have made it.'"  Pena v. Dickhaut, 736 F.3d at 605 (quoting Rodriguez, 675 F.3d at 56).

In short, defendant fails to show any reasonable
probability that the result would have been different, but for
trial counsel's actions.  See Strickland, 466 U.S. at 694.
Neither has defendant demonstrated that trial counsel's
performance fell below an "objective standard of reasonableness"
under the deficiency prong of the Strickland test.  See id. at
687-88.  The ineffective assistance of trial counsel claim
relative to any failure to argue the safety valve's application
therefore does not warrant relief under section 2255.

C.   Failure to Argue Mitigating Role

Defendant additionally argues that trial counsel was
ineffective because he failed "to request a mitigating role in
the charged offense for [defendant], despite the statutory 10
year-mandatory minimum sentence." (Docket Entry # 511, p. 3).
Defendant points out that the plea agreement "included the
applicability of the Safety Valve provision – USSG § 5C1.2, but
did not include the mitigating role played by [defendant] in the
charged offense." (Docket Entry # 511).  Defendant maintains
that he played a minor role as "the delivery man [driving] the
delivery-car, and had nothing to do with drugs itself." (Docket
Entry # 511).  The government responds that, "because of the
quantity of drugs for which he admitted he was responsible,
[defendant] was subject to a 120-month mandatory minimum
sentence," and "given the applicability of the mandatory

20

minimum, the defendant's role was wholly irrelevant to the sentence imposed."  (Docket Entry # 527).

The safety valve provision exempts certain drug offenders from mandatory minimum sentences.  See 18 U.S.C. § 3553(f); U.S. Sentencing Guidelines Manual § 5C1.2.  "Congress's purpose in enacting the provision was to 'mitigate the harsh effect of mandatory minimum sentences' on first-time, low-level offenders in drug trafficking schemes."  United States v. Padilla-Colon, 578 F.3d 23, 30 (1st Cir. 2009) (quoting United States v. Ortiz-Santiago, 211 F.3d 146, 150 (1st Cir. 2000)).  A defendant who wishes to take advantage of the safety valve bears the burden of showing that he has made truthful, complete, and timely disclosures to the government.  Id. at 39.  Decisions in the First Circuit reiterate that "nothing short of truthful and complete disclosure will suffice."  Id. at 38; see Marquez, 280 F.3d 19, 24 (1st Cir. 2002); United States v. Montanez, 82 F.3d 520, 523 (1st Cir. 1996).

The record indicates that trial counsel did not move for a mitigating-role adjustment under section 3B1.2 of the Guidelines or make an objection to the sentencing calculations, and neither did the government recommend a minor role reduction sua sponte. (Docket Entry ## 457, 522).  A mitigating-role adjustment allows for a two-level reduction in a defendant's total offense level. See U.S. Sentencing Guidelines Manual § 3B1.2.  Given the fact

that defendant falls under Criminal History Category I, a two-level reduction would have reduced his total offense level from 31 to 29, reducing the length of sentence from a range of 108 to 135 months to a range of 87 to 108 months under the Guidelines. (Docket # 457).

Bypassing the ineffectiveness prong, defendant cannot prevail based on trial counsel's failure to request a mitigating-role adjustment because he is unable to demonstrate a reasonable probability that trial counsel's omissions, if any, were prejudicial.  See Strickland, 466 U.S. at 694.  The sentence imposed was the mandatory minimum for the violation of 21 U.S.C. § 841(a)(1) and in accordance with the plea agreement that defendant signed.  (Docket Entry # 392).  Defendant was provided an opportunity to avoid the mandatory minimum, but did not satisfy the requirements of the safety valve.  Under the plea agreement, defendant expressly stated that he "understands and acknowledges that, if the Court declines to apply [the safety valve], Defendant will . . . receive a sentence at or above the statutory minimum term of years."  (Docket Entry # 392, p. 3).  During the subsequent Rule 11 hearing, defendant reiterated and agreed he understood that, under the terms of his agreement with the government, the agreed-upon recommendation was a 120-month sentence if he did not satisfy the safety valve provision.  (Docket Entry # 522, pp. 8-9).  The reason he

received the 120-month sentence was because he did not satisfy the safety valve provision with truthful proffers, not because trial counsel did not request a mitigating role adjustment.

Simply stated, the government repeatedly represented and defendant repeatedly stated that the recommended agreement was a 120-month sentence if and only if defendant did not comply with the safety valve provision.  He did not and, as a result, he received the agreed-upon recommendation of a 120-month sentence. Furthermore, "the text of § 3553(e) does not authorize the court to impose a sentence below the statutory minimum unless the Government has made a motion requesting that relief." Melendez v. United States, 518 U.S. 120, 132 (1996) (Stevens, J., concurring).  The government did not waiver from its adherence to the recommended 120-month sentence unless defendant satisfied the safety valve provision.  As previously noted, defendant was denied the safety valve reduction under section 3553(f) because of his lack of credibility and untruthful proffers.  Under the agreed-upon recommendation, even if defendant played a mitigating role, his sentence would remain the same.  (Docket Entry # 392).  On similar facts, the court in Padilla-Colon imposed the five-year mandatory minimum for possession of five grams or more of cocaine, a term beyond the 46 to 57 months prescribed by the Guidelines, after concluding that the defendant did not qualify for safety valve reduction.  See 578

23

F.3d at 25-26.  In short, defendant cannot show "a reasonable
probability that, but for counsel's unprofessional error[], the
result of the proceeding would have been different."
Strickland, 466 U.S. at 694.  Thus, the ineffective assistance
of trial counsel claim based on a failure to request a
mitigating role fails.

VI.  Plea Agreement Not Made Voluntarily, Knowingly, and
Intelligently

     Although not set out as a ground for relief in the section
2255 motion itself, defendant asserts in the supporting
memorandum that "counsel did not fulfill his responsibilities in
the plea bargain process, forcing [defendant] to sign a plea
agreement which did not include the real role played by him in
the charged offense."  (Docket Entry # 511, p. 10).
Consequently, "the plea agreement was not made voluntarily,
knowngly, [sic] and intelligently."  (Docket Entry # 511, p.
10).  The allegation amounts to a request to withdraw his guilty
plea.  In support of the contention that the plea agreement was
not entered voluntarily, knowingly, and intelligently, defendant
adds that "[t]here were too many issues" pressuring him and that
he has a "low level of reasoning."  (Docket Entry # 511, p. 11).
Defendant thus asserts that he "did not understand the nature of
his Fifth and Sixth Amendment rights at the moment of his plea
allocution" and "that he was entering [a] plea of an offense

                              24

without recognizing the mitigating role playing [sic] by him."
(Docket Entry # 511, p. 13).

A guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant" within the meaning of Rule 11. <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970) (finding the defendant voluntarily and knowingly accepts a plea of guilty where he intelligently concludes that his interests require a guilty plea and the record strongly indicates guilt); <u>United States v. Rodriguez-Morales</u>, 647 F.3d 395, 397 (1st Cir. 2011). "[This] rule encompasses three core concerns:  1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea." <u>United States v. Marin-Canales</u>, 215 F.3d 1312 (1st Cir. 2000). A guilty plea is considered voluntary and intelligently made if the defendant enters the plea with full awareness of its "direct consequences." <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970). Although the Supreme Court has not defined "direct consequences," a number of circuit courts define direct consequences as those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment," and deem other consequences to be collateral. <u>Wilson v. McGinnis</u>, 413 F.3d 196, 199 (2d Cir. 2005); <u>see also</u> <u>Dalton v. Battaglia</u>, 402 F.3d 729, 733 (7th Cir. 2005) (finding

as direct consequence, a change in maximum sentence for which defendant is eligible); Steele v. Murphy, 365 F.3d 14, 17 (1st Cir. 2004) (finding as collateral consequence, the possibility of being deemed a sexually dangerous person after conviction); United States v. Salerno, 66 F.3d 544, 550-51 (2d Cir. 1995) (finding as collateral consequence, potential for conviction to be treated as a felony in sentencing for a later offense); United States v. Edwards, 911 F.2d 1031, 1035 (5th Cir. 1990) (finding as collateral consequence, the potential enhancing effect of conviction on future sentences).

The record demonstrates that defendant understood the sentencing range as plainly written in the plea agreement. (Docket Entry # 392).  He acknowledged in the plea agreement that, "I have had this letter read to me in my native language in its entirety and discussed it with my attorney."  (Docket Entry # 392).  The plea agreement states, "Attorney and Defendant agree that . . . incarceration for a period of time not less than 87 months and not more than 120 months, but in no event below any applicable mandatory minimum sentence" is a reasonable and appropriate disposition of this case.  (Docket Entry # 392).  Defendant further acknowledged in the plea agreement that, "I understand the crimes to which I have agreed to plead guilty, [and] the mandatory minimum and maximum penalties for those offenses."  (Docket Entry # 392).  Notably,

26

defendant attested that he and his attorney "have had sufficient time to meet and discuss my case," and that "I am entering into this Plea Agreement freely, voluntarily, and knowingly because . . . I believe this Plea Agreement is in my best interest." (Docket Entry # 392).

At defendant's Rule 11 hearing on June 15, 2015, the government, in reiterating the terms of the plea agreement, specifically stated that, "if the safety valve were not met, 120 months would be the agreed-upon recommendation of the parties." (Docket Entry # 522).  Defendant answered, "Yes," when the court asked "are those the terms of your agreement with the Government, as you understand them?"  (Docket Entry # 522). Such statements during the plea colloquy "carry a strong presumption of verity."  United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997).  The record supports a finding that defendant was adequately informed of the plea agreement's charges and direct consequences, and therefore signed the agreement and knowingly pled guilty.

There is also insufficient evidence to support defendant's assertion that he was forced to sign the plea agreement.  An attorney can, as here, legitimately attempt to persuade his client to plead guilty in his best interest without invalidating a plea.  See Miles v. Dorsey, 61 F.3d 1459, 1470 (10th Cir. 1995).  Defendant presents the argument that "[t]here were too

27

many issues" pressuring him to sign the plea agreement, and therefore his signature was not voluntarily given. (Docket Entry # 511, p. 11). The First Circuit, however, explains that "[t]he strategic decision to plead guilty [is] not rendered involuntary by the anxieties and time pressures confronting [a criminal defendant]." United States v. Marrero-Rivera, 124 F.3d 342, 350, (1st Cir. 1997) (finding such anxieties and pressures to be "common among criminal defendants, and hardly exceptional enough to evince an overbearing of [defendant's] will or to have precluded a rational assessment of the available options"); United States v. Pellerito, 878 F.2d 1535, 1541 (1st Cir. 1989) ("Criminal prosecutions are stressful experiences for nearly all concerned . . .. The relevant question for plea withdrawal is . . . whether the decision to plead was voluntary, i.e., a product of free will.").

Defendant's argument that he "did not understand the nature of his Sixth . . . Amendment right[] at the moment of his plea allocution" (Docket Entry # 511, p. 13) is not convincing because the relevant question for plea withdrawal is not whether defendant's attorney rendered effective performance in explaining the terms of the plea agreement, but whether or not the defendant adequately understood the charges and their

consequences.[3]  See Pellerito, 878 F.2d at 1541.  The terms of

the plea agreement and defendant's statements during the Rule 11

hearing evidence that he understood the plea agreement,

including any failure to include his mitigating role, if any,

and the charges and their consequences.  Overall, the record

demonstrates defendant's claim that he did not voluntarily,

knowingly, and intelligently sign the plea agreement is without

merit.  See Rodriguez-Morales, 647 F.3d at 397.  Defendant

similarly asserts that he "did not understand the nature of his

Fifth . . . Amendment right[] at the moment of his plea

allocution."  (Docket Entry # 511, p. 13).  This assertion,

however, is unaccompanied by a supporting argument, and

therefore waived.[4]  In totality, defendant has not demonstrated a

lack of understanding of the charges or consequences of his

guilty plea, including its sentencing possibilities, nor has

defendant demonstrated that he was coerced into signing it.  For

---

[3]  Trial counsel's failure to argue for a mitigating role in the
charged offense is appropriately addressed, and dismissed as an
ineffectiveness of counsel claim for the reasons stated earlier
in this opinion.
[4]  The court is "not bound . . . to develop legal arguments
merely mentioned in passing."  Alberti v. Carlo-Izquierdo, 548
Fed. Appx. 625, 635 (1st Cir. 2013); see United States v.
Caparotta, 676 F.3d 213, 218 (1st Cir. 2012) ("argument
consist[ing] of just two sentences and two cursory citations in
his brief . . . is therefore waived"); Lamartine v. Ryan, 215 F.
Supp. 3d 189, 194 (D. Mass. 2016); see also Coons v. Industrial
Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

these reasons, defendant's claim that he did not voluntarily and knowingly enter into the plea agreement and thereafter enter a plea of guilty lacks merit.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[5] that the section 2255 motion (Docket Entry # 497) be **DENIED**.

_ /s/ Marianne B. Bowler_____
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[5] Any objections to the Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  See Fed. R. Civ. P. 72(b).  Any party may respond to another party's objection within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.